EUBANKS *vs.* THE STATE OF GEORGIA.

There was sufficient evidence to authorize the verdict.

March 1, 1889.

Evidence. Verdict. New trial. Before Judge FORT. Sumter superior court. April term, 1888.

Holly Eubanks was charged with the burglary of a certain gun, three pistols and a pair of pliers. The evidence for the State tended to show as follows: The storehouse of the prosecutor was burglariously entered one Friday night, before five o'clock in the morning, and a breech-loading shot-gun and repeating pistol and a pair of pliers were taken from it. A pistol cylinder

was among the things taken, there being two or three cylinders left lying on prosecutor's work-bench that night. This gun and pistol and the cylinder (which did not belong to the pistol) about a week after the burglary were found in possession of the defendant; he had the gun and pistol openly exposed to view, and the cylinder was in his pocket. Prosecutor saw him and arrested him, and thereupon the prisoner pulled the cylinder out of his pocket and handed it to prosecutor, who had asked him for it. In addition to this gun, pistol and cylinder, a pair of pliers and a single-barrelled pistol had been stolen at the same time. These pliers and the pistol were found in the possession of another person, and one Jim Pooler was prosecuted for this same burglary. The prosecutor was somewhat uncertain as to whether the cylinder was the same one as that lost from his shop. When the prisoner was arrested, he was on one of the public streets of Americus, and said that the pistol and gun belonged to a man named Hooks. The same gun and pistol were found by one Mims in the possession of some little children, who were not shown to have been related to or in any way connected with prisoner; the cylinder was not with the pistol at that time, and the gun had but one hammer on it; Mims took them, put the pistol in the gun and placed them in his house; the defendant came in and saw the gun. He said it belonged to one Hooks who had tried to get him to pawn it for some whiskey, the night before; that Hooks was around at Chapmans (for whom defendant worked), and Mims told him if it was Hooks' gun to carry it to him; that defendant carried them to Chapman's, where he was seen by prosecutor and arrested, the gun then having two hammers on it; that just before he was arrested he got to Chapman's, having the gun in one hand and the pistol in the other, and told Chapman that the gun

belonged to Mr. Henry Hooks and that he, defendant, got it at Mr. Mims' (Chapman having sent him in that direction after his horse), and that Hooks had told him (defendant) to pawn the gun for whiskey; and that Chapman did not see the cylinder, and defendant said nothing to him about the pistol. On the Saturday night after the burglary Hooks was at Chapman's. Hooks testified that he was in Americus (where the burglary was committed) on the Friday and Saturday night in question; that he had never seen the gun before trial, or the pistol, or the cylinder; that he never asked prisoner to get whiskey or pawn a gun for him; and that while in Americus he was drinking moderately. It farther appeared that defendant usually left Chapman's house about 8 or 9 o'clock at night; that he generally slept about the time in question at the house of one Caroline Bell; that during the latter part, possibly, of the week in question, Chapman found him asleep early on two or three mornings on the straw in his back room; and that defendant said it was cheaper for him to sleep there.

Two witnesses were introduced for the defendant. One of them testified that, on the Friday night in question, a man, not the defendant, tried to pawn this gun to the witness to get money to buy whiskey. On cross-examination, this witness testified that the gun offered to him was a muzzle-loading gun (the gun in question being a breech-loading gun), and at the time in question he did not see the pistol and cylinder; and farther admitted that he had said Hooks was not the man who had offered him the gun. On the re-direct examination, this witness testified that the stolen gun had stripes on it like the gun that was offered to him. The other witness was Caroline Bell. She testified that, on the Thursday night in question, the defendant slept at her house; that he came there at seven o'clock in the even-

ing and left at four o'clock in the morning; that he stayed in the same room that she stayed in, and could not have left during the night without her knowing it; that she had seen him with the cylinder before, and he told her he had picked it up; that on Friday night, the defendant was at her house, coming in a little after seven o'clock in the evening, about the usual hour; that the windows of her house had closed shutters with iron bolts; she found them bolted in the morning, with no tracks around them, though she did not look for any tracks; and that on the Friday and Saturday nights in question, defendant stayed at her home. The defendant also put in evidence the indictment against Pooler, charging him with this same burglary, and the verdict of guilty thereon. In his statement he claimed that Hooks had tried to get him to pawn this gun, and had also tried to sell it to him for fifty cents; that he saw the gun at Mims' and told Mims it was not his (defendant's) gun, but that he had seen Hooks with it, and Mims said, " Well, if it is Hooks', take it to him"; that thinking no harm, he took up the gun and carried it and the pistol up to Chapman's, where he was arrested; that the cylinder did not belong to prosecutor as defendant had had it a long time, having picked it up in Macon; that he slept at Caroline Bell's till Saturday night, and on the straw in Chapman's back room Saturday and Sunday nights.

He was found guilty, and moved for a new trial on the grounds that the verdict was contrary to law, evidence and the charge of the court. The motion was overruled, and he excepted.

L. J. BLALOCK and SIMMONS & KIMBROUGH, for plaintiff in error.

C. B. Hudson, solicitor-general, for the State.

Simmons, Justice.

We have carefully read the evidence in this record, and think there is sufficient evidence to authorize the finding of the jury. There is no doubt that the house was broken open, and that the gun and pistol found in the possession of the defendant were stolen when the house was broken open. When the gun and pistol were turned over to the defendant by Mims, the gun had but one hammer on it; when the defendant carried the gun and pistol to Chapman's store, the gun had two hammers upon it. The defendant did not undertake to explain, either by evidence or in his own statement, how the second hammer got on the gun between the place where he received it and Chapman's store. When Mims turned the pistol over to the defendant, it had no cylinder on it. After the defendant was arrested, he was asked where the cylinder was. He took the cylinder of a pistol from his pocket and handed it to the prosecutor. This cylinder did not fit the pistol, but the prosecutor testified that it was one of the cylinders stolen on the night when his shop was burglarized. The explanation the defendant gave as to how he came in possession of that particular cylinder was not satisfactory.

The defendant also claimed that the gun and pistol did not belong to the prosecutor, but to one Hooks. Hooks denied this in his testimony. Taking these facts in connection with the other testimony in the case, we think there was sufficient evidence to authorize the verdict of the jury, and as the trial judge was satisfied with their verdict, we are not disposed to reverse his judgment in refusing to grant a new trial.

Judgment affirmed.